is Lamberty versus Connecticut State Police. Mr Young, you're here. Yes, sir. Great. And we have two lawyers for the appellees. Mr. Tom. Tom, are you here? Good morning, Your Honor. There you are. Great. And Mr. Steigman. Yes. Good morning, Your Honor. Okay, great. So Mr. Young, you've got 10 minutes, but you've reserved two minutes for rebuttal. So you've got eight minutes out of the gate. The floor is yours. Thank you, Your Honor. May it please the court. Good morning. My name is James Young, and I represent current or former Connecticut State Troopers Mark Lamberty and three others plaintiffs appellants in this appeal. I'd first like to briefly touch upon the issue of the district court's finding that the case was moot in light of defendants undertakings in the wake of the Supreme Court's landmark decision in Janice. While the troopers conceded that stopping fee seizures mooted their claim for injunctive relief, we respectfully submit that the claim for declaratory relief survives for troopers Carson and Colin Connell, twin brothers, in fact, who remain as troopers in the Connecticut State Police. While the district court found the case moot based upon the representations of public officials, officials, the statute challenged by the troopers remains on the books. But wouldn't that argument wouldn't that argument then mean that everybody everywhere gets to bring lawsuits because there are lost. There are statutes on the books that are that are inconsistent with Janice. And so everybody gets to just start bringing suits for declaratory. I don't think so, Judge Sullivan. And here's why. The this case was long pending. It was filed, I believe, in 2014 or 15. Prior to Janice, it was specifically designed as a case to challenge forced unionism in the public sector. And you're anticipating a little bit on my argument. But But the problem with a the notion that long pending cases should be dismissed as moot when Supreme Court change Supreme Court changes the law, rather than using the Supreme Court's change to determine impending cases, is that it turns it turns federal litigation into what is essentially a crapshoot. I hear your concerns. I mean, it does seem like it's going to disincentivize lawyers, plaintiffs lawyers to take cases if they think that somebody else beats them to the Supreme Court. And then they're going to get shut out on attorneys fees down the road. So I sort of get your point. But in terms of mootness, you know, it does seem to me that what you're saying is that something is not moot as long as there's a statute on the books. And I don't see how mootness is going to turn on whether or not the case started before or after the Supreme Court definitively ruled. Well, Your Honor, it's because of the traditional standards of mootness. Now, while we know that courts look very suspiciously at statutory changes that occur, we didn't even have that in this case. And what we don't have doesn't even rise to the level of a statutory change. What we have is the representations of ephemeral public officials. And as I noted in my in my brief, we all know we all are well aware of cases where ephemeral public officials have have defied Supreme Court decision making it. It happened 50 more than 50 years ago in Virginia in massive resistance. It happened in Kentucky just a few years ago with regard to a court clerk who refused to honor the decision in Obergefell. The the the and I think that issue of mootness, the cases that were cited below and by the defendants appellees in this case, all related to mootness arising from statutory changes. I couldn't find a single one. I assume that they could. They would have cited it where the representations of public officials sufficed to establish mootness. This case would be sui generis in that regard, it seems to me. This is the first case that I which I am aware where a court has held that those representations were sufficient to establish mootness. Now, I may believe wholeheartedly and the court may have believed wholeheartedly in the good faith of those public officials, although we did have evidence of some representations that suggested that they were less than thrilled with the outcome of Janice. But the concern is the concern is defeating those statutes. I think those statutory purposes of Section 98 to encourage meritorious civil rights litigation factor in to the court's analysis of whether or not a case relief should be defied. I mean, at this point, everybody here knows that this case is about the issue of attorney's fees. I think I think I not it's not specifically necessary, it seems to me, to reverse the district court on the mootness in order to enter a declaratory judgment. That helps, obviously. But the because of the other factors relating to the fact that what we're really talking about here was a behavior arising out of a settlement, what it was essentially a settlement agreement. That's one reason why the district court on remand and on our motion for reconsideration resorted to rule 408 to try to exclude the evidence that was on that of which everyone was aware of the encouragement of settlement discussions and the fact that what was paid to these plaintiffs was a product of those settlement discussions. The can I go up again? I mean, it seems to me what's lacking here is judicial sanction or judicial imprimatur of this so called settlement. You know, there certainly was a settlement conversation that took place. In fact, the district court encouraged it. But at the end of the day, there's no settlement agreement that the court is enforcing. There's no retention of jurisdiction to enforce it. And ultimately, the court, because the parties couldn't reach a settlement, the court ultimately then reach the issue of attorney's fees. So well, but your honor, I think I think that is a little bit too narrow of a view. The court on every issue except the amount of the attorney's fees. And that's very clear in Magistrate Judge Fitzsimmons email, the the amount that we abided by what we agreed to, we agreed to a four and a half percent. I get all that. I get all that. But the point is, I mean, our Second Circuit case law is pretty clear on this, right, that that that you need to have not just the incorporation of the settlement in a court order, you need some evidence that the district court intended to place its judicial imprimatur on the settlement. And so what evidence is of that? Is there of that here? The mootness finding Judge Sullivan, when the court declared the case moot, the court declared that we had obtained everything that we had by necessary implication, that we had obtained everything we sought in the litigation, that there was nothing more for the court to do because we won, we got what we wanted. And when a court says that, I respectfully submit and I could find no case law saying this, I couldn't find case law on the other side either. But when a court finds a case moot because of the undertakings of the defendants, we respectfully submit that that is sufficient judicial imprimatur under Buchanan. I see my time has expired unless the panel has any other questions at this point. Um, I will get back to you on rebuttal. Okay, well, you've reserved two minutes for rebuttal. So thank you very much. Thank you, sir. So Mr Tan and Mr Steigman have divided their time. So Mr Tong, you've got six minutes and Mr Steigman for Mr Tong. You're gonna go first. Is that the plan? Yes, please. Thank you. Okay. May it please the court. Good morning, Your Honor. I'm the attorney general of the District of Connecticut for the Apple Ease and state defendants. I'll be splitting my time with Mr Steigman. I'm going to focus on two issues, the 11th Amendment and the mootness question. But if you heard Mr Young, he said that this case is really about attorney's fees. I sure hope not. There are much more serious issues at stake here today. We asked the court to affirm the lower court because nothing can be done for the appellants. There's literally no effective relief that this court can give to the appellants for two reasons. Number one, the district court did not have subject matter subject matter jurisdiction below because petitioner claims are barred conclusively by the 11th Amendment. This is so obvious the question of sovereign immunity that Mr Young and the appellants did not brief it before this court and he didn't say a single word about that issue because Mr Young knows that he cannot bring an action on behalf of his clients for any allegations of misconduct related to prior conduct. He can't seek damages. He can't seek injunctive relief. He can't seek notice or declaratory relief under the Supreme Court's well established rules regarding the 11th Amendment and versus Mansoor, which had some similar aspects to it in terms of its facts where a state agency miscalculated benefits under a federal program and then voluntarily changed its conduct with respect to a statutory change. Mr Young also knows that there can't be prospective relief against the state defendants. He cannot seek notice or declaratory relief under the 11th Amendment unless there is an ongoing violation of federal law. There's no ongoing violation of anything. Your honors. The state has voluntarily well actually the state was essentially ordered by the Supreme Court to stop collecting agency fees. It stopped doing so almost immediately after Janice was handed down by the Supreme Court. We'll hear from the union. They uh refunded previously paid agency fees with interest within roughly a month. So there's no ongoing violation for this court to stop under ex parte young. And so the 11th Amendment shuts this case down completely. However, if um the appellants are able to get beyond the 11th Amendment, it is clear that the district court did not have subject matter jurisdiction because the claims are moved again. Nothing can be done for the appellants here. There's no legal interest, there's no injury to vindicate and the case becomes smooth when it's impossible for a court to grant any effectual leaf whatever to the prevailing party. This court made the very same decision that we are asking you to make today just last year in the side of in case. Now that case is very similar in and controls almost on all fours. In that case, you had new York agency fee statute and the court found no standing in that case because there was no injury. In fact, there was no threatened injury uh that was impending or a substantial risk that the harm will occur. There was no factual matter for this court to include that there was any risk that new york state and the defendants in that case would collect agency fees in the future. Now granted that was a question of standing but standing and mootness are close cousins and uh it's really important to note that even if the appellants were able to get past the 11th Amendment which they can and establish standing at the outset of this case. We all know that appellants have to maintain an interest in this case that exists throughout the life of lawsuit. And if they can't, if they can establish standing, they have to keep it and they lost it. Um and this case is moot because there is no relief that this court can give to the appellants. Now petitioners, can I ask you a question? I mean, if right after janice uh the district court said, okay, I've got this pending motion for summary judgment in light of janice. I'm before uh the the state and the union were able to sort of out hustle the court uh and voluntarily return the fees. Uh that would have been a judgment and the court would have been justified in doing that. Right. I would have argued that the court um we would likely have considered an appeal there because the question was moot as soon as the Supreme Court handed down its decision in jail. Even though you, even if the money hadn't been returned, even if it wasn't clear whether the state was going to even comply or be defiant. I think what's important here, your honor, is that the state complied almost immediately within a couple of days. Uh the undersecretary for labor relations announced that we would stop collecting agency fees. Uh and then in less than a week, um the comptroller uh announced a policy change that we would stop collecting agency fees. That happened pretty quickly. Um I think if it was a matter of days or hours, we'd have a pretty strong argument that the case had been mooted by the Supreme Court's decision. Let me just let me just close by saying um your honor that that uh the appellants are going to make an argument or have made an argument about voluntary cessation. And is all the roots that the state uh is engaging in voluntary cessation to defeat subject matter jurisdiction. Respectfully, your honor, nobody believes that there is nothing voluntary really about the state's compliance with Janice. We were told to comply by the U. S. Supreme Court. There's no possibility that the state will turn 180 degrees in the opposite direction and start violating the law. There's no world in which a future governor comptroller or attorney general will say, you know what? There's a Supreme Court case directly on point, but don't worry about it. We're just gonna start collecting agency fees again. Why would we do that? There's no point to invite litigation and to violate standing landmark bedrock law of the U. S. Supreme Court. And with that, your honors, I yield the remainder of our time. Thank you. Thank you. I don't think there is any remainder. Uh so, but uh, Mr Seidman's got four minutes. So go ahead, Mr Seidman. The floor is yours. Um, thank you, your honors. Uh, may please the court. Todd Steigman representing the Connecticut State Police Union. Um, the court should affirm the dismissal of the plaintiff's claims against the union and affirm the decision entering judgment against the plaintiffs. First, the plaintiffs waived a dispositive issue that is sufficient on its own to support the dismissal of the plaintiff's claims against the union when they fail to appeal the basis for the district court's decision, dismissing the plaintiff's claims based on the holium case of this court. That is a sufficient basis on its own on which to support affirmance of the judgment against the plaintiffs and the plaintiffs waived that issue on appeal. Second, as the plaintiffs admit their claims for damages against the union are moot. With respect to the union, there is nothing left for the court to do with respect to those claims. At this point, the district court properly concluded that all the claims against the union were moot and should have been dismissed. On the question of mootness, I want to echo the attorney general's sentiments regarding the sidemen case. This court can easily and should, um, apply his decision last year in sidemen, another post Janice case where there was no live case of controversy. Um, and where this court affirmed a dismissal of a similar post Janice case and also applied Julian to affirm the dismissal of claims against the union. Um, while that was a decision based on standing as opposed to mootness based on the timing of the, um, when the claims were filed, I would submit that that's a distinction without a difference. Um, in both situations, there's no live case or controversy. And I would reference the court to page 18 of our brief in this case, um, citing the Supreme Court's decision and Arizona's for official English versus Arizona and this court's decision in Krakow versus Vance, um, characterizing, um, mootness and name issue just based on the difference in time. Last, this court should affirm the district court's decision denying plaintiff's request for attorney's fees because plaintiffs are not prevailing parties under Buchanan. The district court did not issue a single ruling or order in favor of the plaintiffs, which created a material alteration of the legal relationship between the parties as required by Buchanan. Can I interrupt you there? Because it is a little troubling to me that if the court had there's already a motion pending in a case that was three years old and could have said, Hey, just got Janice. Boom, I'm granting summary judgment on if that were the case, they clearly would have been entitled to attorney's fees, right? I don't agree with that proposition, Your Honor. Um, and, um, why do you not agree with that proposition? First off, under the with respect to the claims against the union under this court's decision in Julian, notwithstanding the fact that a summary judgment was pending and notwithstanding the fact that Janice is issued under Julian, this court dismissed claims against the union under the good faith is good faith defense because the plaintiffs, the union at all times were complying with controlling precedent, um, from the Supreme Court for decades. But the judgment would have said, and you've got to pay them back. Uh, it would have been an order about fees that hadn't yet been returned. No, I don't think that's correct, Your Honor. At least the way that I read Julian was that it affirms the dismissal of the claims against the union and saying that there is no obligation for the union to pay back any money because the union had a good faith defense that this court recognized in Julian as a sufficient basis to dismiss the claims against the union because at all times when they were taking the fees, they were complying with controlling Supreme Court precedent, and they had a good faith basis for relying upon that. And as soon as the Supreme Court issued Janice, the union and the state defendants complied with it. And so the union here had no obligation to refund any fees to any of the plaintiffs. They did so voluntarily without any court order. So the plaintiffs are not under any prevailing. They do not satisfy prevailing party status under cannon. But the refund of um, the fees to the plaintiffs by the union in this case was not legally obligated. It was a completely voluntary act. Let me stop you. So if the court had said, Okay, you guys have agreed to return the fees. Uh, and I'm going to enforce that agreement. Uh, I'm gonna retain jurisdiction to make sure that it all gets paid. Uh, then there would have been a judgment that would make them a prevailing party. So I think it would depend upon the circumstances. Um, but for, um, clarity, I want to, um, you know, uh, make clear that there was no full settlement agreement in this case. It wasn't like the Roberson case. It wasn't like the Perez case that this court's previously issued, where there were full comprehensive settlement agreements that created obligations and an exchange of consideration. Um, there was no full comprehensive settlement agreement in this case. Um, not only was there no comprehensive settlement in this case, there was no court action to that was necessary to effectuate the consummation of that settlement in this court's prior cases. When judicial imprimatur was found, it relied on facts, um, that reflected that judicial action. The district court's action to approve or incorporate the settlement agreement itself into an order was a necessary predicate to effectuating the settlement agreement. Um, and there's nothing like that here in the record at all. Well, should be. Should we be concerned that, uh, you know, basically agreeing with you on mootness and agreeing with you on attorney's fees will chill lawyers, civil rights lawyers from bringing actions under 1983 because they're going to be concerned that unless they're the first ones who get up to the Supreme Court, uh, they're not going to get paid, that they're going to be eight be out several $100,000, according to what the plaintiffs are saying here. Isn't that a concern? Um, your honor, I would respectfully submit that, um, I don't think that that, um, is a concern that would chill plaintiff's lawyers. Um, I do most of my practice as a plaintiff's lawyer representing employees, and we've been living under the Supreme Court's decision in Buchanan for decades and, um, nothing about the Supreme Court's decision in Buchanan has, um, you know, chilled any practice that we've engaged in or as far as I'm aware of, you know, other lawyers, and there's nothing in the record to that effect. The Supreme Court, um, you know, decided Buchanan and address policy arguments on both sides and it decided the way it did, and it rejected the catalyst theory. And lots of the plaintiff's arguments in this case are based on the catalyst theory that, um, the Supreme Court rejected in Buchanan and that, um, this court, um, has recognized, uh, in cases that we've cited in our briefing, that agreeing with plaintiff's arguments when there is no judicial imprimatur or, um, court order, which effectuates a material change in the legal relationship with the parties under Buchanan, um, if those arguments, um, were adopted, it would basically be standing Buchanan on its head. And that's basically what the plaintiffs are asking to do here. Okay, let me get my colleagues of questions. Yeah, I just have one brief question based upon what you said about the Holy in case and also what your colleague, uh, Attorney General has said about the 11th Amendment. This case really doesn't depend upon movements. Would you agree with that? I would wholeheartedly agree with that, Judge Walker, and we made that argument in our briefing, um, that, um, this court can summarily affirm the district court's decision based on both of the issues that the plaintiffs waived on appeal. Uh, with respect to the 11th Amendment, that issue was relied upon by the district court and abandoned by the plaintiffs on appeal. That is a sufficient basis to, um, uh, affirm the dismissal of all the claims against the state defendants. Similarly, with respect to the plaintiff's claims against the union, Julian is dispositive of them all. And again, the district court relied upon that as a basis for dismissal, and the plaintiffs abandoned on appeal. Those two issues. This court can summarily affirm, um, the dismissal without even reaching the question of witness. We made that argument in our briefing, and I think Judge Walker, you're correct about it. All right. Okay. Thank you very much. Mr Steigman will now hear from Mr Young for two minutes of rebuttal. Thank you, Your Honor. Um, you know, I heard the comment by Attorney General Chong of bedrock law, and I'm I'm old enough to remember when a booed was bedrock law. Um, it doesn't seem to me that that's something that litigants can particularly rely on with the same, uh, same certitude that they can rely on judgments. Well, I think everybody remembers a booed being bedrock law. It wasn't that long ago. Well, what about the 11th Amendment? You want to talk about the 11th? I certainly do, because the 11th Amendment issue is as a chimera. Um, I'm not quite old enough to remember when the Supreme Court decided that attorneys fees awards that, uh, that ancillary relief was not subject to the 11 like costs in which attorneys fees are under Section 1988 in the federal rules. Um, since it's been since 18 49 in Missouri v. Iowa, where the Supreme Court recognized that attorneys fees awards or ancillary relief and states are not do not get 11th Amendment immunity as to not raising the issue. Um, we didn't raise it because it was dicta. The district court had already decided that we were not prevailing parties. So whether or not the 11th the state of Connecticut and its official well, its officials were protected by the 11th Amendment was was not relevant to the primary determination of the Cape case. Courts review judgments. They don't review opinions. And in this case, um, much like the dissent is not to be presumed dicta in in street that was used has even used by unions to impede non Um, which was recognized as dicta by the Supreme Court in Knox. The district court's determination that this was dicta. It was, uh, was the Supreme Court's. The district court's determination of 11th Amendment unity was dicta. I also respectfully like to, uh, the, uh, union defendants also argued that somehow they were entitled to the good faith defense. I draw the attention to the joint appendix page to 10, which is the affirmative defenses raised by the defendants below. And if you can find good faith defense in there, tell somebody because I can't. It's not there. They never raised it. They only raise it now is an excuse to suggest that their relief was something other than a desperate attempt to evade an adverse judgment. Um, I know my time is expired, but I do have a few more points I would raise with court's indulgence. If court judge so well, maybe just 30 seconds or so, just because we have some other cases. Thank you, sir. Um, the Attorney General General Tong cited side him inside him. It was another opportunistic case, I believe on I don't have in front of me filed by after Janice was decided. Um, and, you know, the notion that the fee seizures stopped because of Janice is a little too. They didn't stop because of Janice. They stopped because the collective bargaining agreement expired on June 30th. That too is in the record, and it is utterly. That's why the district court didn't get to the indemnification issue. It said that was, uh, moot because because the C. B. A. Had expired. I appreciate the court's indulgence with the extra time. Uh, we otherwise stand on our briefs as to all other issues, and I thank the court for its attention. All right. Well, thank you all. We will reserve decision, but well argued. We'll now